IN THE MATTER OF THE PETITION OF WILLIAM NOTLEY, CHARLES NOTLEY AND MARIA HUGHES FOR A WRIT OF ERROR.

BEFORE HARTWELL, C.J., AT CHAMBERS.

MARCH 5, 1908.

ORAL STATEMENT IN ALLOWING WRIT.

HARTWELL, C. J.  By amendment of the Organic Act, March 3, 1905, the appellants have a right to. bring error from any final judgment of the supreme court of this Territory to the supreme court of the United States in all cases where the amount involved, exclusive of costs, exceeds the sum or value of $5,000.

The petition for a writ of error from the judgment of this court of March 8, 1904, was denied by Chief Justice Frear April 24, 1906, on the ground, as I understand, that the amendment of 1905 did not apply to that judgment.  The appellants obtained the allowance of the writ of error from a justice of the supreme court of the United States.  Now they ask for a writ of error from the judgment of this court of September 27, 1907, that was entered by consent of the appellees.  I do not know, for I have not read the assignment of errors, on what grounds they claim error in that judgment for which they ask for a writ of error to be granted.  I will say this—I am not in the habit of reading assignments of error because I do not consider that I have anything to do with them.  If the application is in proper form and if the conditions required by the statute con-

cerning the ground involved and by our practice and rules of court concerning a bond required to be filed are complied with I consider it to be my imperative duty, under this act that I have referred to, to grant the writ; that I am not at liberty to exercise any discretion in the matter, as in cases, for instance, where the writ of error is asked, not under this statute, but on the ground that there is a federal question involved. There I can see that it would be my duty to examine the case and decide whether, in my opinion, there was a federal question involved, and if there was not it would be my duty to deny the writ. That is not this case however.

Now, owing to the fact that I was attorney at the argument before this court of a motion for rehearing of the decision sustaining the will, although it has been held in this case that this did not disqualify a judge—a ruling which has been followed in many subsequent decisions,—I asked counsel for the applicants here to inform me of the occasion to ask me for the writ. They showed me a cablegram from Mr. Robert Morse of Boston, who represents them before the United States supreme court, asking them to obtain the writ immediately. Going still further, I pressed them to ascertain and inform me why this writ was asked for here. They did so and have shown me a cablegram from Mr. Morse, as I remember it, to the effect that the supreme court of the United States had reserved the question, as I understand, of the effect on the case of this last judgment —later judgment, I would say.

Although not obliged, as I understand, to have a hearing on these applications for writs of error, or to notify opposing counsel of the application, for the reason that I have given for asking the questions of the applicants I also asked them to inform counsel on the other side of the application and that I would like to hear any objections that they had to make. No notice was given and I did not intend that any notice should be given by the clerk in the usual form in showing cause, but it was merely an informal matter. Now counsel have filed, as I understand

from them, a statement in writing of their objections to the granting of this writ including, in addition to the objection to my acting in the matter in consequence of my having argued the motion for rehearing, their statement that all these errors assigned now—all these matters assigned as error now—were assigned in the former writ of error which had been dismissed, and they orally informed me—whether it is in the written statement, I can't say—

MR. STANLEY. It is in the written statement.

HARTWELL, C. J. They informed me that by stipulation by counsel the same things it was agreed should be considered—the effect of the judgment of 1907—

MR. STANLEY. Not the effect of the judgment, but the judgment itself, should be incorporated in the record.

HARTWELL, C. J. The judgment itself.

MR. STANLEY. Yes.

HARTWELL, C. J. Very well. Well now I cannot say, as a matter of course, what effect that stipulation may have had upon the United States supreme court; they may have said that it should not be regarded at all.

The reason why Mr. Morse, whom I have known for over fifty years, should have cabled for this writ to be issued here is something that I can't understand. I am told by Mr. Prosser, one of the attorneys for the applicants, that Mr. Morse had been advised by him that he was about to leave for Washington next Friday—tomorrow, and I can infer, if I wish to theorize about the matter, that Mr. Morse wanted to save himself a trip to Washington, and it is possible that his professional engagements are such that he would like to have the writ go right on here-- that I can understand. But whatever his reasons, I don't see how I have the right, and I certainly don't dare, to refuse the writ. I am not ill nor absent from the Territory and therefore this matter cannot be brought before anybody else but myself.

The filing of the written objections to the writ is probably unauthorized, this being not a formal proceeding, and I will

candidly inform counsel that I should order that, of my own motion, to be struck from the record but for the fact of its personal statement concerning myself. Therefore, allowing it to stand is not to be deemed as a precedent for similar matters in the future, and the writ may be taken out.